UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT B. PETTYJOHN, II,

    Petitioner,

v.                                                CASE NO: 8:05-CV-1383-T-30TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS, and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

Petitioner, ROBERT B. PETTYJOHN, II, (hereafter "Petitioner" or "Pettyjohn"), an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1). The Court has considered the petition, Respondents' response (Dkt. #10) and Petitioner's reply (Dkt. #11). For the reasons set forth below, the Court has determined that the petition should be denied.

### BACKGROUND

Petitioner was charged with one count of armed trespassing on property and two counts of killing/aggravated abuse of registered cattle. The allegation was that he and a co-defendant entered a pasture where they shot two bulls with bows and arrows, killing one and maiming the other. On October 29, 2001, Petitioner entered an open plea of guilty to all counts. On January 10, 2002, Petitioner was sentenced to five years imprisonment as to

Count One, suspended after three years followed by two years of community control. As to Counts Two and Three, Petitioner received a sentence of ten years imprisonment, suspended after three years, followed by two years of community control, followed by five years of probation, all concurrent with Count One.

When Petitioner entered his guilty plea on October 10, 2001, he was represented by Ms. Christie Pardo. Before sentencing, he changed lawyers and was represented by Mr. M. D. Purcell, Jr. who filed a Motion to Continue Sentencing or in the Alternative to Set Aside the Plea. The motion to withdraw the plea contended that, based on the evaluation of Dr. Boutin of Petitioner's mental problems, a new defense could be raised that Petitioner was arguably unable to form the specific intent necessary to commit the crimes charged. The motion said nothing about Petitioner being mentally incompetent or unable to understand the charges and penalties he faced.

Subsequent to the sentencing of January 10, 2002, Petitioner filed a direct appeal raising the following issues:

(1) Whether appellant should have been permitted to withdraw his plea or been granted an evidentiary hearing on the motion to withdraw plea due to "mental weakness."

(2) Whether appellant should have been permitted to withdraw his plea or been granted an evidentiary hearing on his motion to withdraw his plea due to a mistake or a misapprehension and the newly discovered evidence regarding appellant's mental condition may have provided a defense to charges against him.

The Second District Court of Appeal *per curiam* affirmed without written decision on February 12, 2003.[1] Following the adverse ruling from the Second District Court of Appeal, Petitioner, through his third lawyer, Ms. Yanes, filed a motion seeking Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 raising the following issues:

(1) Appellant's mental state at the time he entered the plea made him incapable of entering a knowing, intelligent and voluntary plea.

(2) Trial counsel was ineffective for misadvising appellant as to the sentence he would receive if he entered a guilty plea, therefore his plea was not knowing, intelligent and voluntary.

This motion for the first time raised the issue of whether Petitioner was mentally capable of entering a knowing and voluntary plea.

The state trial court held an evidentiary hearing on the post-conviction motion on July 22, 2004, and August 2, 2004. After hearing testimony from witnesses, including the testimony of Petitioner himself, the trial court made a finding of fact that Pettyjohn "was competent at the time he entered his plea, and . . . had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational as well as a factual understanding of the proceedings against him," and denied the motion by written order on August 24, 2004. (R, Ex. 10, p. 596).

---

[1] Robert B. Pettyjohn, Jr. v. State, 838 So.2d 1159 (Fla. 2d DCA 2003) [table].

Petitioner timely filed the instant petition seeking a writ of habeas corpus from this Court pursuant to 28 U.S.C. §2254 asserting two grounds for relief:

**GROUND ONE:**
Petitioner was deprived of his federal constitutional rights to due process and the effective assistance of counsel.

**GROUND TWO:**
Petitioner should have been permitted to withdraw his plea because of his serious mental illness at the time of the plea prevented him from entering a knowing, intelligent and voluntary plea.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, 28 U.S.C. §2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Since the trial court in this case, after an evidentiary hearing, made a finding of fact that Petitioner was mentally competent to knowingly and voluntarily enter a guilty plea, this

case will turn on whether the state trial court judge based his decision "on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." This Court may not substitute its judgment for that of the state court just because it may have reached a different conclusion when faced with the same facts. Bell v. Cone, 535 U.S. 685 (2002). A state court factual finding is presumed to be correct and Petitioner has the burden of overcoming the factual finding by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## **DISCUSSION**

Pettyjohn raises two issues in his petition, both of which are bottomed on whether he was mentally competent at the time of his guilty plea to enter a knowing and voluntary plea. Therefore, since both grounds concern the same issue, they will be discussed together.

In his well-written brief,[2] Pettyjohn summarizes his argument as follows:

> Petitioner's severe mental illness rendered him incompetent to enter a plea. A defendant may be found competent only if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). This standard applies to the entry of a guilty plea as well as a trial. Godinez v. Moran, 509 U.S. 389, 398-99 (1993). Petitioner was unable to consult with Ms. Pardo with a reasonable degree of rational understanding, and Petitioner did not have a rational or factual understanding of the proceeding against him.

(Petitioner's memorandum of law (Dkt. #2), p.3)  Petitioner asserts that there was "unrebutted expert testimony" which established that Petitioner entered a guilty plea while he was not competent to do so. (Petitioner's memorandum of law, Dkt. #2, p. 2)

---

[2] The Court notes that Petitioner's memorandum of law is well-reasoned and succinctly written. It fails only to make appropriate citations to the record in support of his assertions, but this did not influence this Court's ruling.

At the evidentiary hearing on the post-conviction motion, Petitioner's counsel did present compelling testimony from Dr. Boutin, a psychologist, concerning Petitioner's mental competence at the time of the entry of his guilty plea. Dr. Boutin testified as follows:

DIRECT EXAMINATION

BY MS. YANES:

Q. Dr. Boutin, you evaluated Mr. Pettyjohn in this case on the first date of October 15, of 2001. What is your opinion regarding his mental status at that time?

A. His mental status at that time was that he was extremely confused, depressed, showed signed of possible hallucinations and appeared to be very close to psychotic.

Q. Thank you. What diagnosis did you reach as a result of your examination of Mr. Pettyjohn?

A. We - - I have diagnosed him with schizo-affective disorder, bi-polar type, attention deficit disorder, a learning disability disorder, borderline personality disorder.

Q. Thank you. Do you have an opinion as a result of your examination of Mr. Pettyjohn as to Mr. Pettyjohn's mental state as of October 29 of 2001, the date he entered his plea in this case?

A. Well, yeah. I saw him just two weeks prior to that plea and I don't believe that he had the capability to competently enter a guilty plea.

Q. What is your opinion as to whether Mr. Pettyjohn would have been able to understand the basis of the charges or allegations against him?

A. I think with his mental status so deeply deteriorated I do not feel that he was - - would be able to understand the charges.

Q. What is your opinion as to whether Mr. Pettyjohn was able to appreciate the range and nature of the possible penalties that might be imposed on him at the time he entered his plea?

A. I don't believe that he would be able to understand the nature of the sentencing or what the results of the sentencing would be.

Q. So - - and I just want to make sure this is clear for the record, what your opinions as to whether Mr. Pettyjohn was competent to enter a plea as of October 29, of 2001?

A. Reviewing my records and everything, he - - at the time of my evaluation on 10-15-01, he was experiencing psychosis and psychotic behavior and that would make it virtually impossible for him to competently render a plea.

Q. To the best of your knowledge at the time of your October evaluation of Mr. Pettyjohn was Mr. Pettyjohn receiving any treatment or psychiatric medication for his mental illness?

A. No, he was not taking any medications, he was not being treated for his mental illness.

Q. In your opinion were such medications and treatment required?

A. Absolutely.

    MS. YANES:    Thank you.

    THE COURT:    Cross-examination?  Mr. Gale, do you have any questions for the doctor?

    MR. GALE:    Yes, I do, Your Honor, thank you.

CROSS-EXAMINATION

BY MR. GALE:

Q. Dr. Boutin, Ronald Gale for the State Attorney's Office. Can you hear me okay, sir?

A. Yes, I can, sir.

Q. You met with Mr. Pettyjohn only on one occasion prior to him entering his plea, is that correct?

A. Yes, sir.

Q. And that was approximately two weeks before he entered the plea?

A. Yes it was, sir.

Q. And how did you come to meet with Mr. Pettyjohn? Who asked you to do that?

A. I was asked to evaluate - - I believe it was a Court order for me to do that.

Q. Okay. And for what purposes, sir?

A. The purpose was to evaluate his mental status and determine his mental status at the time of the evaluation and make suggestions regarding what his mental status was.

Q. Were you specifically asked to evaluate Mr. Pettyjohn for his competency to stand trial or enter a plea?

A. No, I was not.

Q. Okay. So your evaluation prior to him entering this plea, the only time you met with him, it was not an evaluation to determine his competency?

A. No, it was not a determination at that point, and I was asked to review my information and if I can go back to my records of that day it definitely shows that he was psychotic at the time.

Q. Now, you are aware that there - - and I know you're aware that there are very specific criteria that are relevant to a person's competency, correct?

A. Correct.

Q. So did you discuss these specific - - being that you were not there to evaluate his competency did you even discuss these specific criteria with Mr. Pettyjohn?

A. No, I didn't discuss those criteria with him, but in his altered state, his state of psychosis he was not capable of understanding the purposes of his evaluation.

Q. I know you have said that that's your opinion - -

A. Yes.

Q. - - but did you specifically discuss with him whether - what the charges were against him and whether he understood what those charges were?

A. We talked about the charges and we talked about different aspects of what might happen, but he was not capable of really - - we didn't focus too much on that because at that point he was extremely, as I said, psychotic and was not capable of understanding those things.

Q. Did you ever specifically discuss with him what the possible penalties were, the minimum and maximum penalties he could have received?

A. No I didn't specifically go over that, no, sir.

Q. Are you ever aware of any incidents in which Mr. Pettyjohn failed to manifest proper courtroom behavior?

A. I'm not aware of any, no, sir.

    MR. GALE:    I have no further questions for the doctor.

    THE COURT:    Any further questions for the doctor?

    MS. YANES:    I just one further question if I may, Dr. Boutin.

    THE WITNESS:    Absolutely.

REDIRECT EXAMINATION

BY MS. YANES:

Q. Regardless of why you were retained to evaluate Mr. Pettyjohn, was your evaluation of him sufficient to allow you to evaluate his competency?

A. Yes, it was.

(R, Exhibit X, pp. 391-397)

On cross-examination, the state was able to weaken Dr. Boutin's testimony somewhat by pointing out that he was testifying from notes concerning an examination that occurred more than two years previously and that his examination was not performed for the purpose of determining whether Pettyjohn was capable of assisting trial counsel and entering a knowing and voluntary plea. Dr. Boutin had been asked to render an opinion at sentencing concerning Pettyjohn's mental status and give an opinion as to the type of treatment or incarceration that would be appropriate.

It was no surprise that Pettyjohn suffered from mental problems. After all, the state had strong evidence that he had climbed a fence and shot two registered bulls with a bow and arrow, killing one and maiming the other. The issue before this Court, and before the state trial court judge during the post-conviction motion hearing, was whether Petitioner had sufficient mental competence to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as a factual understanding of the proceedings against him.

The ability to understand the charges against him and assist his lawyer is not the same as having a mental problem, such as being bi-polar. Under §2254, this Court is constrained to review the evidence before the state trial court judge to see if there was sufficient evidence from which a reasonable fact-finder could have reached the same conclusion as the state trial court judge.

Contrary to Petitioner's assertion, the expert testimony of Dr. Boutin was not unrebutted. First, the Court notes that the state trial court judge had the benefit of the testimony of Petitioner himself, both at the time he entered his guilty plea and at the time of the post-conviction motion hearing. On both occasions, Petitioner gave rational, coherent answers and showed an understanding of the nature of the charges against him and, at the post-conviction motion hearing, showed a clear recollection and understanding of the advice given him by his counsel. It is disingenuous to testify at the post-conviction hearing that he understood his lawyer's advice and it was wrong (wrong in that it estimated incorrectly the ultimate sentence that would be given by the judge) and at the same time argue he did not have the mental capacity to understand the advice. Petitioner says he pled guilty because his lawyer told him he would not be given jail time. In fact, his sentencing score indicated that he would not receive jail time. But the sentencing judge went above the guideline sentence because of the nature of the crime. It appears that the sentence of three years in jail, albeit in the youthful offender program, is what prompted the post-conviction efforts to withdraw the guilty plea.

Second, it appears from the record that both of Petitioner's parents are medical doctors. They testified at the guilty plea hearing and neither testified that he was incapable of understanding the advice of his lawyer or the charges against him. To the contrary, his parents testified that he was a warm, caring, compassionate teenager. Petitioner's mother testified again at the post-conviction hearing concerning the advice given by counsel at the time of entering of the guilty plea, but once again did not testify that her son was unable to understand the advice.

Third, Pettyjohn's counsel, Ms. Pardo, testified that she had many discussions with Petitioner prior to the entry of the guilty plea. She testified that Petitioner understood the charges against him, was able to assist with his defense, and understood the possible penalties that could be imposed by the Court. This testimony alone is sufficient to support the state court judge's findings of fact.

In summary, after reviewing the record and the testimony before the state trial court judge at the post-conviction motion hearing, this Court concludes the state trial court judge had more than sufficient evidence before it to support its factual findings that Petitioner "had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational as well as a factual understanding of the proceedings against him." The able state court judge set out this evidence in detail in his written order. (Final Order Denying Post-Conviction Motion, R, Ex. 10, p. 439).

It is therefore ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on February 7, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2005\05-cv-1383.deny 2254.wpd*